UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT B. LeBLANC and
JOAN S. LeBLANC,

      Plaintiffs,                                                                            No. 06-CV-13588-DT

v.                                                                                            Hon. Gerald E. Rosen

THE STATE OF MICHIGAN,

      Defendant.

**OPINION AND ORDER REGARDING
THE COURT'S ORDER TO SHOW CAUSE
AND ORDER OF DISMISSAL**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     August 1, 2007

PRESENT:    Honorable Gerald E. Rosen
                      United States District Judge

## I. INTRODUCTION

This RICO Act action is presently before the Court on the Order of the Court directing the parties to Show Cause why this case should not be dismissed under various abstention/immunity doctrines. Plaintiffs and Defendant have both responded. Having reviewed and considered the parties briefs, supporting evidence, and the entire record of this case, the Court has determined that oral argument is not necessary. Therefore, pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs.

## II. FACTUAL BACKGROUND

On August 11, 2006, *pro se* Plaintiffs, Robert B. and Joan S. LeBlanc, commenced this action when they filed a 118-page complaint against Defendant, the State of Michigan. (*See*

1

Complaint.) In their complaint, Plaintiffs alleged various violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68 (2006), accusing so-called "State Actors" of predicate acts of mail fraud, wire fraud, and violations of the Hobbs Act, 18 U.S.C. § 1951 (2006). (*See* Complaint.) Among those individuals identified in Plaintiffs' complaint are Ingham Circuit County Judge Paula Manderfield; two of Judge Manderfield's clerks; Assistant Attorney General Barbara Schmidt; and James Neal, attorney for Core Energy, L.L.C. ("Core"). (*See id.*) Plaintiffs have, however, named only the State of Michigan as a party-defendant. (*See id.*)

Plaintiffs complaint concerns oil and gas issues arising from two unrelated situations involving two different parcels of real property owned by Plaintiffs -- "Tract A," 80 acres, located in Ostego County, T31N, R2W, E1/2 OF NE 1/4, Sec. 24; and "Tract B," also located in Ostego County, T31N, R1W, SW1/4 of SW1/4, Sec. 19. (*See id.*)

### A. <u>Facts Relating to Tract A.</u>

Tract A was previously owned by the State of Michigan. (Plaintiffs' Exhibit 26.) In December, 1941, Michigan conveyed 40 of the 80 acres comprising the tract to J.C. and Millie Kidder. (Plaintiffs' Exhibit 27.) In July, 1942, Michigan conveyed the remaining 40 acres to the Kidders. (Plaintiffs' Exhibit 28.) Plaintiffs acquired title to the entirety of Tract B in 1965. (Plaintiffs' Exhibit 1.) The State, however, never conveyed the mineral rights along with the land. (*See* Plaintiffs' Exhibits 27-28). Instead, the Michigan Department of Natural Resources (M.D.N.R.) has leased the right to explore for and extract minerals, including oil and gas, to various lessees. (Incidentally, Plaintiffs have had multiple disputes with these lessees concerning permissible use of the tract's surface lands.) (*See* Plaintiffs' Exhibits 1-35.) Plaintiffs allege that the M.D.N.R. does not, in fact, own the mineral rights, and has attempted to

hide this fact from them. (*See* Complaint.)

B. **Facts Relating to Tract B.**

Tract B sits adjacent to another tract of land, not owned by Plaintiffs, for which Core Energy has successfully petitioned the Michigan Department of Environmental Quality (M.D.E.Q.) for approval of a unit operation to develop oil and for that operation to be excepted from otherwise applicable well-spacing regulations. *Petition of Core Energy, L.L.C.*, No. (A) 4-2-05 (M.D.E.Q. May 4, 2005). Plaintiffs intervened in the M.D.E.Q. administrative proceeding concerning whether to grant Core Energy's Petition, objecting to the Petition and testifying that the operation would adversely affect their mineral interests in Tract B. (Defendant's Response of 10/02/06 at 3); *see Petition, supra*. Plaintiffs offered no evidence whatsoever to support their claims, and Core Energy's Petition was ultimately granted. Petition at 7-9, *supra*.

Undeterred, Plaintiffs filed a Petition for Judicial Review with the Circuit Court of Ingham County, Michigan, claiming that the M.D.E.Q. erred in its judgment. *Leblanc v. Core Energy, L.L.C.*, No. 05-730-AA (Mich. Cir. Sept. 11, 2006). On September 11, 2006, the Circuit Court found for Core, noting that Plaintiffs had "failed to meet their burden in showing that the decision of the [M.D.E.Q.] was either contrary to law, was not supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was an abuse of discretion, or was otherwise affected by a substantial and material error of law." *Id.* at 1-2. Plaintiffs have not appealed the decision of the Circuit Court and instead commenced the present federal action on August 11, 2006.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." The court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Kottmyer,* 436 F.3d at 688. While this standard is liberal, it does require more than bare assertions of legal conclusions. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007). To survive a motion to dismiss, the complaint "does not need detailed factual allegations, [however, mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). Courts do not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id.* at 1974.

### B. PLAINTIFFS CLAIMS IN THIS ACTION ARE BARRED BY THE ELEVENTH AMENDMENT

#### 1. The Eleventh Amendment Recognizes the Sovereign Immunity of States from Suit by Individuals.

As originally ratified, Article III of the United States Constitution mandated that "[t]he judicial power shall extend . . . between a State and Citizens of another State . . . ." U.S. Const. art. III, § 2. Soon after, the Supreme Court reified the perceived outrage to state sovereignty

posed by that language in the landmark case of *Chisolm v. Georgia*, 2 U.S. 419 (1791), holding that the language of Article III meant what was plainly printed: that individual citizens could sue state governments in federal court. Within four years of the *Chisolm* decision, the states ratified the Eleventh Amendment to the United States Constitution, providing, contrary to the original language of Article III, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. As the Supreme Court noted over a century ago, the Eleventh Amendment recognized "first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890) (quoting *The Federalist* No. 81 (Alexander Hamilton))) (internal quotation marks omitted).

Accordingly, an individual citizen may sue a state as such only if the state has waived its immunity and plainly consented to the suit or if Congress has legitimately abrogated the state's immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Courts have further construed the Eleventh Amendment to proscribe suits by citizens against their own state in federal court, despite the literal textual limitation of the Amendment to suits against "another State." *Hans v. Louisiana*, 134 U.S. 1, 15-18 (1890); *see* U.S. Const. amend. XI; *see also Pennhurst*, 465 U.S. at 100; *Seminole Tribe*, 517 U.S. at 54.

Additionally, a plaintiff may not circumvent the Eleventh Amendment by simply naming a state official as a defendant "in a suit against the official's office" such that "it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

5

(citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  Accordingly, a plaintiff may not sue a state officer in an official or representative capacity for damages, *id.*, but may sue the same for injunctive relief, *ex parte Young*, 209 U.S. 123, 159-160 (1908), and may always sue a state officer in an individual capacity, *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Similarly, a plaintiff again may not circumvent the Eleventh Amendment by simply naming a state agency or entity as a defendant when such agencies or entities constitute "arms of the State."  *Brotherton v. Cleveland*, 173 F.3d 552, 559-60 (6th Cir. 1999) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44-51 (1994)).

**2. The Court May Raise and Decide the Eleventh-Amendment Defense *Sua Sponte*.**

Although the Court did not specify the Eleventh Amendment as possible grounds for dismissal in its Show Cause Order, Defendant did raised the issue in its response to that Order, as well as in its initial Answer to Plaintiffs' Complaint.  (Answer at 3; Defendant's Response of 10/02/06 at 9-10.)  Further, because of the quasi-jurisdictional nature of an Eleventh Amendment defense (i.e., the defense may be raised at any stage of litigation, but may also be waived and need not be raised by the Court on its own), a district court may, if it so chooses, raise and decide the defense *sua sponte*.  *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998); *Patsy v. Bd. of Regents*, 457 U.S. 496, 515 (1982).  Therefore, considering that the application of the Amendment to this case is fairly clear and irrefutable and that the Court is adequately apprised, from the pleadings and briefings of both parties, of all issues material to the immunity doctrine in this case, the Court will decide the issue now.  *See Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (considering and deciding Eleventh Amendment immunity *sua sponte* on appeal "[d]espite the fact that the Ohio Attorney General [did] not press[] the immunity question . . . " but did

6

plead the Eleventh Amendment as an affirmative defense and provided a supplemental brief on the issue). *Cf. Patsy*, 457 U.S. at 515 (refusing to immediately consider and decide Eleventh-Amendment immunity when "the parties have not briefed the issue").

        3.      **<u>Plaintiffs' Claims Are Barred by the Eleventh Amendment.</u>**

Concerning whether the State, state officials, and or state agencies are parties to this suit, although Plaintiffs refer to numerous "State Actors" throughout their complaint and response to the Court's Order to Show Cause, Plaintiffs have named only the State of Michigan as a defendant. It goes without saying that a party not named in a lawsuit is not a party to the lawsuit, and Fed. R. Civ. P. 4(a) requires a plaintiff to "identify . . . the parties" to the suit. Because Plaintiffs have only officially sued the State as such, they appear to blatantly violate the Eleventh Amendment. Plaintiffs' only hope for salvaging the Court's jurisdiction over their claims is if the State has consented to the suit or Congress has abrogated the State's immunity; neither has occurred.

Concerning waiver and consent, because of the overriding concern for the sanctity of the federalist system, federal courts will find that a state has expressly waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-306 (1990) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-240 (1985) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974))) (internal quotation marks omitted). In this case, the State of Michigan answered Plaintiffs' complaint with an affirmative defense of Eleventh Amendment immunity and reiterated in its response to the Court's Show Cause Order that "it does not consent to this suit." (Answer at 3; Defendant's Response of 10/02/06 at 10.) Clearly, the State of Michigan has not expressly consented to this

lawsuit.

Federal courts may also find that a state has implicitly waived its immunity, but only in very narrow circumstances, such as when a state engages in extensive discovery or seeks judgment on the merits without raising the immunity issue. *See, e.g., Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (holding that the defendant waived immunity when, "[i]nstead of asserting its Eleventh Amendment immunity defense, Tennessee engaged in extensive discovery and then invited the district court to enter judgment on the merits"). In this case, Michigan has raised, preserved, and reiterated the affirmative defense of Eleventh Amendment immunity. (Answer at 3; Defendant's Response of 10/02/06 at 10.) Therefore, Defendant has in no way implicitly waived its immunity granted by the Eleventh Amendment.

Concerning abrogation, "'[t]o temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure,'" federal courts apply a two-part test "to determine whether Congress has abrogated the States' sovereign immunity . . . ." *Seminole Tribe*, 517 U.S. at 55-56 (1995) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989)). A court must determine "first, whether Congress has 'unequivocally expressed its intent to abrogate the immunity,' . . . and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

Plaintiffs here premise their claims on the RICO Act. No text of the Act purports to abrogate the States' Eleventh Amendment immunity, *see* RICO Act §§ 1961-68, and several decisions of this Circuit have held that RICO-based actions against states fail to pass muster under the Amendment, *see, e.g., Akbar-El v. Ohio Dep't of Corrections*, No. 96-4062, 1997 U.S. App. LEXIS 25342, at *4 (6th Cir. Sept. 17, 1997); *Engels v. McDonald*, No. 96-1676, 1997

8

U.S. App. LEXIS 25316, at *3 (6th Cir. Sept. 15, 1997); *White v. Howard*, No. 93-1548, 1993 U.S. App. LEXIS 27490, at *2 (6th Cir. Oct. 19, 1993)). Indeed, "there is no authority that the enactment of . . . RICO had th[e] effect [of abrogating individual states' sovereign immunity]." *Akbar-El*, 1997 U.S. App. LEXIS 25342, at *4. Therefore, Congress has in no way abrogated, through the RICO Act, the immunity granted by the Eleventh Amendment.

Because Plaintiffs have named only the State of Michigan as a defendant, the State has neither expressly nor implicitly consented to be sued by an individual, and Congress has not in any way abrogated the State's immunity with respect to suit by an individual in federal court under the RICO Act, the Eleventh Amendment to the United States Constitution grants the State of Michigan absolute immunity from suit in this case. Accordingly, Plaintiffs have clearly and unambiguously failed to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiffs' August 8, 2006 Complaint is DISMISSED, with prejudice, for failure to state a claim upon which relief can be granted.

s/Gerald E. Rosen  
Gerald E. Rosen  
United States District Judge

Dated: August 1, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 1, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry  
Case Manager